[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13217

_____

DAVID E. STONE,
KARI S. CARROLL,
as surviving spouse of Thomas Carroll,
DAVID C. DEPADRO,

Plaintiffs-Appellants,

*versus*

COMMISSIONER OF INTERNAL REVENUE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

D.C. Docket No. 9:22-cv-80154-KAM

————————————

Before JORDAN, ROSENBAUM, and HULL, Circuit Judges.

JORDAN, Circuit Judge:

A whistleblower, generally speaking, is a person who goes public with allegations of mismanagement or wrongdoing in a government agency or a private organization. *See* The American Heritage Dictionary of the English Language 1960–61 (4th ed. 2009); William Safire, Safire's New Political Dictionary 872 (1993). Sometimes a whistleblower will act for altruistic reasons, but sometimes the motivation is financial. This case involves the latter.

The Internal Revenue Code contains a whistleblower provision which allows persons to report alleged violations of the federal tax laws and receive up to 30% of any unpaid taxes or penalties collected by the IRS. *See* 26 U.S.C. § 7623(b). But what happens if the IRS, despite crediting the information, decides not to institute enforcement proceedings against the offending taxpayers because the effort would be too costly, too burdensome, or too time-consuming? Does the whistleblower have any judicial remedy against the IRS under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)?

The district court said no, and dismissed the APA complaint filed by whistleblowers David Stone, Kari Carroll (as the surviving spouse of Thomas Carroll), and David Depadro for lack of subject-matter jurisdiction. We conclude that the IRS' refusal to follow

through on the information provided by these whistleblowers was a decision "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), and is therefore unreviewable under the APA. We affirm.[1]

**I**

We conduct plenary review of the district court's dismissal for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013). When, as here, there is a facial challenge to subject-matter jurisdiction, we take the factual allegations in the complaint as true. *See McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).

An appellee, as the prevailing party in the district court, may defend the judgment on any ground appearing in the record as long as it does not seek to enlarge its rights or lessen the rights of the appellants. *See Jennings v. Stephens*, 574 U.S. 271, 276 (2015). We "may affirm the district court's judgment on any ground that appears in the record, whether or not that ground was relied upon or even considered by the district court." *Equal Emp. Opp. Comm'n v. STME, LLC*, 938 F.3d 1305, 1313 (11th Cir. 2019) (quotation and bracket omitted).

---

[1] For ease, we refer to Mr. Stone, Ms. Carroll, and Mr. Depadro collectively as the appellants.

## II

Under the Internal Revenue Code, Real Estate Mortgage Conduits ("REMICs") are entities that can avoid income taxation on investment revenue from their mortgage portfolios if they comply with certain statutory requirements. *See* 26 U.S.C. §§ 860A *et seq*. The REMIC requirements are set forth in 26 U.S.C. § 860D(a), and one of them is that "substantially all" of the entity's assets must "consist of qualified mortgages and permitted investments." 26 U.S.C. § 860D(a)(4).

## A

On March 18, 2011, Mr. Stone and Mr. Carroll (now represented by his wife, Ms. Carroll) jointly filed whistleblower claims with the IRS through a Form 211 (an "Application for Award for Original Information"). They submitted the claims pursuant to 26 U.S.C. § 7623.[2]

Mr. Stone and Mr. Carroll alleged that the financial industry, including over 330 entities identified in their claims, separated notes from mortgages so that the notes could be sold to investors without any recorded transfer of the real estate security. Once separated, the notes and their underlying debt obligations were no longer secured, thereby removing their status as qualified, tax-exempt REMICs. Because these REMICs did not satisfy the statutory requirements of § 860D(a)(4), their income—in the hundreds of

---

[2] Due to its length, § 7623 is reproduced in an appendix to our opinion.

millions of dollars—was always taxable to their sponsors. And this income was therefore owed to the United States by those sponsors.

The IRS Whistleblower Office referred the claims to the IRS' Large Business and International Division ("LB&I") for audit. Mr. Stone and Mr. Carroll provided supplemental documentation to the LB&I Division, including information on the named taxpayer-bank sponsors of the various REMICs that they claimed failed to comply with the statutory requirements.  LB&I personnel reviewed the whistleblower claims and, on August 28, 2012, internally determined that these claims could have far-reaching implications beyond the entities identified by Mr. Stone and Mr. Carroll. Indeed, after reviewing the information provided in the whistleblower claims, an IRS auditing employee wrote that the "REMIC IPG has reviewed the information and determined it has merit," and recommended that a sample of the identified taxpayers be examined.

Ultimately, however, the IRS' LB&I Division decided not to take any action on the whistleblower claims and recommended that the claim for an award be denied on that basis. Internally, the IRS memorialized its decision in an evaluation report, explaining that "[t]hough the Government does not dispute the claimants' allegations, to examine the transfer of title for all loans in the trust, the Government would expend significant resources." The evaluation report also analyzed other aspects of the whistleblower claims, including the use of the MERS system by the mortgage securitization industry, the alleged harm to the government or the investors

of the audited sample entities, and the relevant entities' possible compliance with the substance of federal requirements despite imperfections in form. Based on this analysis, the IRS decided that it would take no action, and on October 27, 2015, sent preliminary denial letters to Mr. Stone and Mr. Carroll. The IRS issued a final denial on February 1, 2016.

Mr. Stone, Mr. Carroll, and Mr. Depardo filed a parallel joint whistleblower claim in March of 2012, alleging that a Deutsche Bank subsidiary had wrongfully claimed REMIC tax-exempt status. This claim fared no better and, on August 27, 2016, the IRS rendered a final denial on that claim as well.

**B**

The appellants filed petitions for review of each of these denials, respectively, in the Tax Court. The petitions were filed under 26 U.S.C. § 7623(b)(4).

Regarding the first whistleblower denial, Mr. Stone and Mr. Carroll jointly requested, among other things, a final determination, a declaratory decree, and/or injunctive relief from the Tax Court compelling the IRS to set aside the denial, declaring the denial "arbitrary, capricious, and contrary to law," compelling the IRS to enforce the relevant tax laws, and granting "quantum meriut" fees of $2,727,000.00 for each claimant as compensation for their whistleblower services. The Tax Court granted the IRS' motion for summary judgment, affirming the denial of the claim for an award and concluding that the prerequisites for an award had not been met. The Tax Court noted, however, that § 7623(b)—the provision

under which the petition was brought—did not confer authority upon it to review the alleged tax liabilities underlying the claims, nor did it authorize it to direct the IRS to commence an enforcement action. Mr. Stone and Mr. Carroll did not seek appellate review of the Tax Court's decision.

Mr. Depadro and Mr. Stone filed a second petition in the Tax Court related to the Deutsche Bank whistleblower claim. Like its predecessor, the second petition requested, among other things, a declaration that the IRS failed to apply and enforce the relevant tax laws equitably and conducted its "interaction" with Mr. Depadro and Mr. Stone in an arbitrary and capricious manner; an order setting aside the denial and compelling the IRS to audit their claims; a finding that there was an "implied contract" with the IRS under common law; an order compelling the IRS to investigate the subject taxpayers; and an order awarding "quantum meruit" fees of $2,727,000.00 each. This petition was ultimately dismissed by the Tax Court, which affirmed the IRS' denial of the claim for an award.

Mr. Depadro and Mr. Stone moved to vacate that order of dismissal, asserting that the Tax Court failed to consider whether the IRS had complied with the APA. The Tax Court rejected this argument, explaining that the APA did not expand its jurisdiction under § 7623(b) to analyze anything beyond the IRS' award determination. The Tax Court explained that the central issue was "whether the IRS collected proceeds as a result of an administrative or judicial action using the whistleblower's information, not

whether it could have or should have." Mr. Depadro and Mr. Stone did not seek appellate review of the Tax Court's decision.

## C

In January of 2022, the appellants jointly filed a complaint in the district court seeking review of the IRS' denial of their whistleblower claims under the APA, 5 U.S.C. § 706(2)(A). Specifically, the appellants brought a single count under the APA for the IRS' alleged "arbitrary and capricious agency action" in denying their claims. The appellants alleged that their claims "should have been properly investigated," that the "REMICs should have been reviewed and audited," and that "the IRS should have conducted administrative proceedings on their claims." The appellants further alleged that the IRS misunderstood and misapplied the "substance over form" doctrine, mistakenly believed the whistleblower claims to be primarily based on fraudulent "robo-signing," and failed to meet the standards espoused in the IRS' own written policy statement. Accordingly, the appellants requested that the district court rule that the IRS' final denials were unlawful, set them aside, and remand their whistleblower claims for review, enforcement and collection proceedings, and a whistleblower award.

The district court dismissed the complaint without prejudice for lack of subject-matter jurisdiction, ruling that the appellants had an adequate remedy in the Tax Court that barred the application of the APA's waiver of sovereign immunity pursuant to 5 U.S.C. § 704 (providing for judicial review of a final agency action "for which there is no other adequate remedy in a court"). Though it

concluded that it lacked jurisdiction, the district court alternatively dismissed the complaint with prejudice on *res judicata* grounds based on the Tax Court's previous two decisions affirming the denials.[3]

Following a review of the record and with the benefit of oral argument, we affirm the district court's dismissal of the appellants' complaint without prejudice, albeit for different reasons. Specifically, we conclude that judicial review is not permitted under the APA because the IRS' decisions to not pursue enforcement actions were "committed to agency discretion by law" within the meaning of 5 U.S.C. § 701(a)(2).

### III

The United States and its agencies are immune from suit unless Congress "unequivocally" waives that immunity by statute. *See Lehman v. Nakshian*, 453 U.S. 156, 160–62 (1981). "[A]nd the terms of [the government's] consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). The Supreme Court has said that "a waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign." *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999).

---

[3] The government, in its motion to dismiss, argued that the IRS' decision not to institute enforcement or collection proceedings was "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), and as a result, judicial review was not permitted. The district court did not address this argument, but the government presses it on appeal.

When applicable, the APA provides a waiver of sovereign immunity. *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215–16 (2012). The appellants, as the parties seeking to rely on the APA, must establish that their claim falls within the APA's terms. *See United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003).

## A

A valid whistleblower claim, by itself, is insufficient to require a statutory award under 26 U.S.C. § 7623(b). The IRS may make an award only if it institutes an administrative proceeding or judicial action and recovers proceeds. *See* 26 C.F.R. § 301.7623-1(a) ("The awards provided by [§] 7623 . . . must be paid from collected proceeds[.]"); 16 Boris Bittker & Lawrence Lokken, Federal Taxation of Income, Estates and Gifts ¶ 114.6.4 (Nov. 2023) (explaining that the IRS must proceed with an administrative or judicial action and recover proceeds). Here, the IRS chose not to institute enforcement actions based on the appellants' whistleblower claims, and therefore, never collected any proceeds.

The APA "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992). Under the APA, any person "adversely affected or aggrieved" by an agency action, including a "failure to act," is entitled to judicial review of such action, as long as the action is a "final agency action for which there is no other adequate remedy in a court." *See generally* 5 U.S.C. §§ 701–706. Judicial review under the

APA is inappropriate, however, when "agency action is committed to agency discretion by law." *Id.* § 701(a)(2). As relevant here, an agency's refusal to institute investigative or enforcement proceedings generally falls within the gamut of § 701(a)(2)'s exception to judicial review. *See Heckler v. Chaney*, 470 U.S. 821, 837–38 (1985). *See also Dep't of Com. v. New York*, 139 S. Ct. 2551, 2568 (2019) ("We have generally limited the [§ 701(a)(2)] exception to certain categories of administrative decisions that courts traditionally have regarded as committed to agency discretion, such as a decision not to institute enforcement proceedings[.]") (citations and internal quotation marks omitted).

The Supreme Court has repeatedly recognized "that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler*, 470 U.S. at 831 (collecting cases). Agency refusals to enforce or investigate not only fall outside of the scope of the APA's general presumption of review, they are also presumptively unreviewable. *See id.* This is due "in no small part to the general unsuitability for judicial review" of such discretionary decisions. *See id.*

There are a number of reasons for this unsuitability. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1906 (2020) (citing *Heckler*, 470 U.S. at 831). For starters, an agency decision not to enforce or investigate typically "involves a complicated balancing of a number of factors which are peculiarly within its expertise," requiring the agency to determine "not only . . .

whether a violation has occurred, but [also] whether agency re-
sources are best spent on this violation or another, whether the
agency is likely to succeed if it acts, whether the particular enforce-
ment action requested best fits the agency's overall policies, and,
indeed, whether the agency has enough resources to undertake the
action at all." *Heckler*, 470 U.S. at 831. In addition, non-enforcement
decisions generally do not involve an agency's "coercive power
over an individual's liberty or property rights, and thus do[ ] not
infringe upon areas that courts often are called upon to protect."
*Id.* at 832 (emphasis omitted). *See also* 33 Richard Murphy, et al.,
Federal Practice and Procedure § 8325 (2d ed. 2018 & Apr. 2023
update) (explaining that *Heckler* relied heavily on past practices and
functional concerns to justify adopting a rule that agency decisions
refusing to initiate enforcement actions are "presumptively unre-
viewable").

Nevertheless, this presumption against judicial review is just
that—a presumption. It may be rebutted by a showing that "the
substantive statute [at issue] has provided guidelines for the agency
to follow in exercising its enforcement powers." *Heckler*, 470 at
832–33. By enacting such a statute, "Congress may limit an
agency's exercise of enforcement power if it wishes, either by set-
ting substantive priorities, or by otherwise circumscribing an
agency's power to discriminate among issues or cases it will pur-
sue." *Id.* at 833. Congress can indicate its intent to circumscribe

22-13217            Opinion of the Court            13

enforcement discretion by requiring "meaningful standards for de-fining the limits of that discretion." *Id.* at 834.[4]

**B**

Applying these principles here, we conclude that the IRS' de-nials of the appellants' whistleblower claims—based on a determi-nation that enforcement actions would expend "significant re-sources"—were committed to the agency's discretion by law, and were therefore presumptively unreviewable. The appellants have not pointed to anything in § 7623 or any other substantive statute that rebuts this presumption. As a result, the APA's waiver of sov-ereign immunity does not apply, and the district court was correct in ruling that it lacked subject-matter jurisdiction.

Acknowledging that the IRS "arguably" retains discretion to choose whether to investigate or bring enforcement actions, the appellants attempt to re-frame their case as one seeking the "review and correct[ion] [of] a wrongheaded, irrational blanket policy deci-sion" by the IRS. In other words, the appellants assert that they are

---

[4] Some have criticized the Supreme Court's "action/inaction distinction" as "incoherent and hard to apply." Eric Biber, *The Importance of Resource Allocation in Administrative Law*, 60 Admin. L. Rev. 1, 4 (2008). In at least some circum-stances, the line is indeed blurry. *Compare, e.g.*, *Massachusetts v. EPA*, 549 U.S. 497, 527 (2007) ("There are key differences between a denial of a petition for rulemaking and an agency's decision not to initiate an enforcement action."), *with, e.g.*, *Conservancy of Sw. Fla. v. U.S. Fish & Wildlife Serv.*, 677 F.3d 1073, 1084 (11th Cir. 2012) ("The decision whether to initiate rulemaking, like the exercise of enforcement discretion, typically involves a complex balancing of factors, such as the agency's priorities and the availability of resources, that the agency is better equipped than courts to undertake.").

not in fact seeking to force an audit or prosecution of the REMIC entities. Instead, they say they request only judicial review of the IRS' purported blanket denials and the agency's "arbitrary and capricious" misapplication of the "substance over form" doctrine discussed in *Gregory v. Helvering*, 293 U.S. 465 (1935). We are unpersuaded by the appellants' argument.

In their complaint, the appellants expressly sought to force an investigation or enforcement action by the IRS through declaratory or injunctive relief from the district court. *See* Compl. at 13 (requesting, in their prayer for relief, that the court "[h]old unlawful and set aside" the IRS' denials, "[r]emand" the appellants' claims "to the IRS for review and appropriate action, including but not limited to, collection proceedings," and "[r]equire the IRS to award [the appellants] any [w]histleblower awards due to them"). The very basis of the complaint was that the IRS should have properly investigated the appellants' whistleblower claims, should have reviewed and audited the REMICs, and should have conducted administrative proceedings on the whistleblower claims, thus ultimately entitling the appellants to statutory whistleblower awards. *See id.* ¶ 26. As the appellants acknowledge, all of these are actions within the IRS' discretion. *See* Appellants' Br. at 30–31.

Moreover, the appellants' complaint lacks any allegation that the IRS' denials constituted the blanket "general policy" upon which their appeal now relies—a theory, by the way, not raised in the appellants' response to the agency's motion to dismiss. Though the Supreme Court has left open the possibility of judicial review

for "a situation where it could justifiably be found that the agency has 'consciously and expressly adopted a general policy' that is so extreme as to amount to an abdication of its statutory responsibilities," *Heckler*, 470 U.S at 833 n.4, no such general policy is alleged here.[5]

Indeed, the complaint (and its attached exhibits) indicate that the IRS reviewed the appellants' whistleblower claims, conducted the very balancing espoused in *Heckler*, and, in its discretion, determined that the investigative, enforcement, and collection efforts were not worth the expenditure of significant resources. *See* Compl. ¶ 24, Ex. E. This was a prototypical non-enforcement decision by a federal agency.

The appellants complain that the IRS' decision was wrongheaded and will result in continued violations of the tax laws and a significant loss of tax revenue. Even if they are possibly right, the decision is still not one we can review. Almost every agency decision to not undertake enforcement action will have its detractors, but the availability of judicial review under the APA does not depend on whether that decision was the correct one.

We are equally unpersuaded that the IRS' alleged misapplication of the substance-over-form doctrine somehow moves the

---

[5] The Supreme Court "express[ed] no opinion on whether such [general policy] decisions would be unreviewable under § 701(a)(2)." *Heckler*, 470 U.S. 833 n.4. Rather, the Court noted that "in those situations the statute conferring authority on the agency might indicate that such decisions were not 'committed to agency discretion.'" *Id.*

needle. First, even taking the appellants' allegations as true, the IRS' discussion of the substance-over-form issue was just one of numerous factors discussed in the evaluation report, once more indicating that the agency undertook a balancing analysis "peculiarly within its expertise." *Heckler*, 470 U.S. at 830–31. An agency must consider "whether a violation has occurred," but though it "is far better equipped than the courts to deal with the many variables involved," it "generally cannot act against each technical violation of the statute it is charged with enforcing." *Id.* at 831.

Even if the IRS had reviewed the appellants' whistleblower claims and conclusively determined that the identified REMICs were in fact violating the Internal Revenue Code, *Heckler* underscores that the IRS *still would not have been required* to take enforcement actions against those REMICs based on its discretion to determine the agency's complex enforcement priorities. This is not to say that an agency can completely abdicate its statutory obligations. But the IRS is entrusted by Congress with reviewing allegations of tax violations and determining whether it is in the government's best interest to pursue specific allegations based on a variety of factors. The IRS did so here.

The appellants have not cited to any specific statute that somehow limits the IRS' discretion to act on whistleblower claims. As a result, there is no "sufficient 'law to apply' as to allow judicial review." *Greenwood Utilities Comm'n v. Hodel*, 764 F.2d 1459, 1464 (11th Cir. 1985). *See also Heckler*, 470 U.S. at 837 (holding that a statute did not provide meaningful standards because it did not "speak[

] to the criteria which shall be used by the agency for investigating possible violations of the [statute]"). Statutory language that merely authorizes agency enforcement or sanctions is insufficient. *See id.* at 835 (statutory provisions authorizing the agency to conduct investigations and stating that any person who violates the statute "shall be imprisoned . . . or fined" did not constrain the agency's enforcement discretion).

We note, as well, that the IRS regulation which implements § 7623 does not provide any standards cabining or limiting the agency's exercise of discretion in deciding whether to begin enforcement actions based on whistleblower claims. *See* 26 C.F.R. § 301.7623-1(a)–(f). This confirms our conclusion that § 701(a)(2)'s exception to judicial review applies.[6]

## C

In their brief, the appellants suggest that a 2012 internal memorandum written by Steven T. Miller, IRS Deputy Commissioner for Services and Enforcement, may constitute "meaningful standards" for defining the limits of the IRS' discretion with regard to whistleblower claims. The memorandum, addressed to various IRS leaders, explained that the IRS Whistleblower Office would be working with Mr. Miller's group to establish operating guidelines and procedures to improve the timeliness and quality of the agency's investigative and enforcement decisions. Mr. Miller outlined various key principles behind the prospective procedures,

---

[6] The regulation is also reproduced in the appendix.

including timeliness and the usefulness of whistleblower debriefing. Notably, though the memorandum does contain expectations regarding the timeliness of whistleblower determinations, it also reflects an understanding "that there will be times when these timelines cannot be met, and exceptions will be necessary to ensure that the decision on whether to proceed to an audit or investigation considers all relevant information." Compl., Ex. N at 2.

Borrowing language from *Heckler*, we find this purported policy statement "singularly unhelpful." *Heckler*, 470 U.S. at 836. For one, the memorandum does not reflect any statutory directive from Congress. Moreover, contrary to the appellants' assertion, it does not set out "an entire class of prerequisite procedural steps" to be undertaken by the IRS. Instead, it outlines general guidelines and expected timelines for analyzing whistleblower claims. The memorandum also fails to place any limits or obligations on the IRS' discretion to enforce or investigate claims, and indeed, *highlights* the agency's discretion. *Cf. id.* ("Although the statement indicates that the agency considered itself 'obligated' to take certain investigative actions, that language did not arise in the course of discussing the agency's discretion to exercise its enforcement power, but rather in the context of describing agency policy."). "Whatever force such a statement might have, and leaving to one side the problem of whether an agency's rules might under certain circumstances provide courts with adequate guidelines for informed judicial review of decisions not to enforce," the language in Mr. Miller's memorandum cannot "plausibly be read to override the agency's" enforcement discretion as outlined above. *See id.*

## IV

The IRS' decisions to not take enforcement actions pursuant to the appellants' whistleblower claims are matters "committed to agency discretion by law" under 5 U.S.C. § 701(a)(2). The appellants have failed to identify any statutory or regulatory constraints on the IRS' discretion to decline to investigate alleged tax violations or to enforce the tax laws. Thus, the APA's waiver of sovereign immunity does not apply and the district court was without subject-matter jurisdiction to review the whistleblowers' complaint.[7]

We affirm the district court's dismissal of the complaint for lack of subject-matter jurisdiction but remand for purposes of revising the judgment to reflect that the dismissal is only under § 701(a)(2) and is without prejudice.

**AFFIRMED AS TO THE DISMISSAL FOR LACK OF SUBJECT-MATTER JURISDICTION AND REMANDED FOR PURPOSES OF REVISING THE JUDGMENT.**

---

[7] Given our resolution, we do not address the district court's § 704 and *res judicata* rulings.

## APPENDIX

**26 U.S.C. § 7623. E**XPENSES OF DETECTION OF UNDERPAYMENTS AND **FRAUD, ETC.**

(**a**) **In general.**--The Secretary, under regulations prescribed by the Secretary, is authorized to pay such sums as he deems necessary for--

(**1**) detecting underpayments of tax, or

(**2**) detecting and bringing to trial and punishment persons guilty of violating the internal revenue laws or conniving at the same,

in cases where such expenses are not otherwise provided for by law. Any amount payable under the preceding sentence shall be paid from the proceeds of amounts collected by reason of the information provided, and any amount so collected shall be available for such payments.

(**b**) **Awards to whistleblowers.**--

(**1**) **In general.**--If the Secretary proceeds with any administrative or judicial action described in subsection (a) based on information brought to the Secretary's attention by an individual, such individual shall, subject to paragraph (2), receive as an award at least 15 percent but not more than 30 percent of the proceeds collected as a result of the action (including any related actions) or from any settlement in response to such action (determined without regard to whether such proceeds are available to the Secretary). The determination of the amount of such award by the

Whistleblower Office shall depend upon the extent to which the individual substantially contributed to such action.

(2) **Award in case of less substantial contribution.**--

(A) **In general.**--In the event the action described in paragraph (1) is one which the Whistleblower Office determines to be based principally on disclosures of specific allegations (other than information provided by the individual described in paragraph (1)) resulting from a judicial or administrative hearing, from a governmental report, hearing, audit, or investigation, or from the news media, the Whistleblower Office may award such sums as it considers appropriate, but in no case more than 10 percent of the proceeds collected as a result of the action (including any related actions) or from any settlement in response to such action (determined without regard to whether such proceeds are available to the Secretary), taking into account the significance of the individual's information and the role of such individual and any legal representative of such individual in contributing to such action.

(B) **Nonapplication of paragraph where individual is original source of information.**--Subparagraph (A) shall not apply if the information resulting in the initiation of the action described in paragraph (1) was originally provided by the individual described in paragraph (1).

(3) **Reduction in or denial of award.**--If the Whistleblower Office determines that the claim for an award under paragraph (1) or (2) is brought by an individual who planned and initiated the actions that led to the underpayment of tax or actions described in

subsection (a)(2), then the Whistleblower Office may appropriately reduce such award. If such individual is convicted of criminal conduct arising from the role described in the preceding sentence, the Whistleblower Office shall deny any award.

(4) **Appeal of award determination.**--Any determination regarding an award under paragraph (1), (2), or (3) may, within 30 days of such determination, be appealed to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter).

(5) **Application of this subsection.**--This subsection shall apply with respect to any action--

(A) against any taxpayer, but in the case of any individual, only if such individual's gross income exceeds $200,000 for any taxable year subject to such action, and

(B) if the proceeds in dispute exceed $2,000,000.

(6) **Additional rules.**--

(A) **No contract necessary.**--No contract with the Internal Revenue Service is necessary for any individual to receive an award under this subsection.

(B) **Representation.**--Any individual described in paragraph (1) or (2) may be represented by counsel.

(C) **Submission of information.**--No award may be made under this subsection based on information submitted to the Secretary unless such information is submitted under penalty of perjury.

(**c**) **Proceeds.**--For purposes of this section, the term "proceeds" includes--

(**1**) penalties, interest, additions to tax, and additional amounts provided under the internal revenue laws, and

(**2**) any proceeds arising from laws for which the Internal Revenue Service is authorized to administer, enforce, or investigate, including--

(**A**) criminal fines and civil forfeitures, and

(**B**) violations of reporting requirements.

(**d**) **Civil action to protect against retaliation cases.**--

(**1**) **Anti-retaliation whistleblower protection for employees.**--No employer, or any officer, employee, contractor, subcontractor, or agent of such employer, may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment (including through an act in the ordinary course of such employee's duties) in reprisal for any lawful act done by the employee--

(**A**) to provide information, cause information to be provided, or otherwise assist in an investigation regarding underpayment of tax or any conduct which the employee reasonably believes constitutes a violation of the internal revenue laws or any provision of Federal law relating to tax fraud, when the information or assistance is provided to the Internal Revenue Service, the Secretary of the Treasury, the Treasury Inspector General for Tax Administration, the Comptroller General of the United States,

the Department of Justice, the United States Congress, a person with supervisory authority over the employee, or any other person working for the employer who has the authority to investigate, discover, or terminate misconduct, or

(**B**) to testify, participate in, or otherwise assist in any administrative or judicial action taken by the Internal Revenue Service relating to an alleged underpayment of tax or any violation of the internal revenue laws or any provision of Federal law relating to tax fraud.

(**2**) **Enforcement action.**--

(**A**) **In general.**--A person who alleges discharge or other reprisal by any person in violation of paragraph (1) may seek relief under paragraph (3) by--

(**i**) filing a complaint with the Secretary of Labor, or

(**ii**) if the Secretary of Labor has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant, bringing an action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy.

(**B**) **Procedure.**--

(**i**) **In general.**--An action under subparagraph (A)(i) shall be governed under the rules and procedures set forth in section 42121(b) of title 49, United States Code.

(ii) **Exception.**--Notification made under section 42121(b)(1) of title 49, United States Code, shall be made to the person named in the complaint and to the employer.

(iii) **Burdens of proof.**--An action brought under subparagraph (A)(ii) shall be governed by the legal burdens of proof set forth in section 42121(b) of title 49, United States Code, except that in applying such section--

(I) "behavior described in paragraph (1)" shall be substituted for "behavior described in paragraphs (1) through (4) of subsection (a)" each place it appears in paragraph (2)(B) thereof, and

(II) "a violation of paragraph (1)" shall be substituted for "a violation of subsection (a)" each place it appears.

(iv) **Statute of limitations.**--A complaint under subparagraph (A)(i) shall be filed not later than 180 days after the date on which the violation occurs.

(v) **Jury trial.**--A party to an action brought under subparagraph (A)(ii) shall be entitled to trial by jury.

(3) **Remedies.**--

(A) **In general.**--An employee prevailing in any action under paragraph (2)(A) shall be entitled to all relief necessary to make the employee whole.

(B) **Compensatory damages.**--Relief for any action under subparagraph (A) shall include--

(**i**) reinstatement with the same seniority status that the employee would have had, but for the reprisal,

(**ii**) the sum of 200 percent of the amount of back pay and 100 percent of all lost benefits, with interest, and

(**iii**) compensation for any special damages sustained as a result of the reprisal, including litigation costs, expert witness fees, and reasonable attorney fees.

(4) **Rights retained by employee.**--Nothing in this section shall be deemed to diminish the rights, privileges, or remedies of any employee under any Federal or State law, or under any collective bargaining agreement.

(5) **Nonenforceability of certain provisions waiving rights and remedies or requiring arbitration of disputes.**--

(**A**) **Waiver of rights and remedies.**--The rights and remedies provided for in this subsection may not be waived by any agreement, policy form, or condition of employment, including by a predispute arbitration agreement.

(**B**) **Predispute arbitration agreements.**--No predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this subsection.

**26 C.F.R. § 301.7623-1 GENERAL RULES, SUBMITTING INFORMATION ON UNDERPAYMENTS OF TAX OR VIOLATIONS OF THE INTERNAL REVENUE LAWS, AND FILING CLAIMS FOR AWARD.**

(a) **In general.** In cases in which awards are not otherwise provided for by law, the Whistleblower Office may pay an award under section 7623(a), in a suitable amount, for information necessary for detecting underpayments of tax or detecting and bringing to trial and punishment persons guilty of violating the internal revenue laws or conniving at the same. In cases that satisfy the requirements of section 7623(b)(5) and (b)(6) and in which the Internal Revenue Service (IRS) proceeds with an administrative or judicial action based on information provided by an individual, the Whistleblower Office must determine and pay an award under section 7623(b)(1), (2), or (3). The awards provided for by section 7623 and this paragraph must be paid from collected proceeds, as defined in § 301.7623–2(d).

(b) **Eligibility to file claim for award.** (1) **In general.** Any individual, other than an individual described in paragraph (b)(2) of this section, is eligible to file a claim for award and to receive an award under section 7623 and §§ 301.7623–1 through 301.7623–4.

(2) **Ineligible whistleblowers.** The Whistleblower Office will reject any claim for award filed by an ineligible whistleblower and will provide written notice of the rejection to the whistleblower. The following individuals are not eligible to file a claim for award or receive an award under section 7623 and §§ 301.7623–1 through 301.7623–4—

(i) An individual who is an employee of the Department of Treasury or was an employee of the Department of Treasury when

the individual obtained the information on which the claim is based;

(**ii**) An individual who obtained the information through the individual's official duties as an employee of the Federal Government, or who is acting within the scope of those official duties as an employee of the Federal Government;

(**iii**) An individual who is or was required by Federal law or regulation to disclose the information or who is or was precluded by Federal law or regulation from disclosing the information;

(**iv**) An individual who obtained or had access to the information based on a contract with the Federal Government; or

(**v**) An individual who filed a claim for award based on information obtained from an ineligible whistleblower for the purpose of avoiding the rejection of the claim that would have resulted if the claim was filed by the ineligible whistleblower.

(**c**) **Submission of information and claims for award.** (**1**) **Submitting information.** To be eligible to receive an award under section 7623 and §§ 301.7623–1 through 301.7623–4, a whistleblower must submit to the IRS specific and credible information that the whistleblower believes will lead to collected proceeds from one or more persons whom the whistleblower believes have failed to comply with the internal revenue laws. In general, a whistleblower's submission should identify the person(s) believed to have failed to comply with the internal revenue laws and should provide substantive information, including all available documentation, that supports the whistleblower's allegations. Information that identifies a pass-through entity will be considered to also identify all persons with a direct or indirect interest in the entity. Information that identifies a member of a firm who promoted another

identified person's participation in a transaction described and documented in the information provided will be considered to also identify the firm and all other members of the firm. Submissions that provide speculative information or that do not provide specific and credible information regarding tax underpayments or violations of internal revenue laws do not provide a basis for an award. If documents or supporting evidence are known to the whistleblower but are not in the whistleblower's control, then the whistleblower should describe the documents or supporting evidence and identify their location to the best of the whistleblower's ability. If all available information known to the whistleblower is not provided to the IRS by the whistleblower, then the whistleblower bears the risk that this information might not be considered by the Whistleblower Office for purposes of an award.

(**2**) **Filing claim for award.** To claim an award under section 7623 and §§ 301.7623–1 through 301.7623–4 for information provided to the IRS, a whistleblower must file a formal claim for award by completing and sending Form 211, "Application for Award for Original Information," to the Internal Revenue Service, Whistleblower Office, at the address provided on the form, or by complying with other claim filing procedures as may be prescribed by the IRS in other published guidance. The Form 211 should be completed in its entirety and should include the following information—

(**i**) The date of the claim;

(**ii**) The whistleblower's name;

(**iii**) The whistleblower's address and telephone number;

(**iv**) The whistleblower's date of birth;

(**v**) The whistleblower's taxpayer identification number; and

(**vi**) An explanation of how the information on which the claim is based came to the attention and into the possession of the whistleblower, including, as available, the date(s) on which the whistleblower acquired the information and a complete description of the whistleblower's present or former relationship (if any) to person(s) identified on the Form 211.

(**3**) **Under penalty of perjury.** No award may be made under section 7623(b) unless the information on which the award is based is submitted to the IRS under penalty of perjury. All claims for award under section 7623 and §§ 301.7623–1 through 301.7623–4 must be accompanied by an original signed declaration under penalty of perjury, as follows: "I declare under penalty of perjury that I have examined this application, my accompanying statement, and supporting documentation and aver that such application is true, correct, and complete, to the best of my knowledge." This requirement precludes the filing of a claim for award by a person serving as a representative of, or in any way on behalf of, another individual. Claims filed by more than one whistleblower (joint claims) must be signed by each individual whistleblower under penalty of perjury.

(**4**) **Perfecting claim for award.** If a whistleblower files a claim for award that does not include information described under paragraph (c)(2) of this section, does not contain specific and credible information as described in paragraph (c)(1) of this section, or is based on information that was not submitted under penalty of perjury as required by paragraph (c)(3) of this section, the Whistleblower Office may reject the claim or notify the whistleblower of the deficiencies and provide the whistleblower an opportunity to perfect the claim for award. If a whistleblower does not perfect the claim for award within the time period specified by the

Whistleblower Office, then the Whistleblower Office may reject the claim. If the Whistleblower Office rejects a claim, then the Whistleblower Office will provide notice of the rejection to the whistleblower pursuant to the rules of § 301.7623–3(b)(3) or (c)(7). If the Whistleblower Office rejects a claim for the reasons described in this paragraph, then the whistleblower may perfect and resubmit the claim.

(d) **Request for assistance.** (1) **In general.** The Whistleblower Office, the IRS, or IRS Office of Chief Counsel may request the assistance of a whistleblower or the whistleblower's legal representative. Any assistance shall be at the direction and control of the Whistleblower Office, the IRS, or the IRS Office of Chief Counsel assigned to the matter. See § 301.6103(n)–2 for rules regarding written contracts among the IRS, whistleblowers, and legal representatives of whistleblowers.

(2) **No agency relationship.** Submitting information, filing a claim for award, or responding to a request for assistance does not create an agency relationship between a whistleblower and the Federal Government, nor does a whistleblower or the whistleblower's legal representative act in any way on behalf of the Federal Government.

(e) **Confidentiality of whistleblowers.** Under the informant's privilege, the IRS will use its best efforts to protect the identity of whistleblowers. In some circumstances, the IRS may need to reveal a whistleblower's identity, for example, when it is determined that it is in the best interests of the Government to use a whistleblower as a witness in a judicial proceeding. In those circumstances, the IRS will make every effort to notify the whistleblower before revealing the whistleblower's identity.

(f) **Effective/applicability date.** This rule is effective on August 12, 2014. This rule applies to information submitted on or after August 12, 2014, and to claims for award under sections 7623(a) and 7623(b) that are open as of August 12, 2014.